IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TRENDON WASHINGTON, | * | |
| Petitioner, | * | |
| v. | * | Civil Action No. GLR-16-2374 |
| FRANK BISHOP, et al., | * | |
| Respondents. | * | |

*****

## MEMORANDUM OPINION

THIS MATTER is before the Court on Petitioner Trendon Washington's pro se Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (2018) (ECF No. 1), as supplemented (ECF No. 6) (the "Petition" or "Habeas Petition"). The Petition is ripe for disposition, and no hearing is necessary. See Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts; Local Rule 105.6 (D.Md. 2018); see also Fisher v. Lee, 215 F.3d 438, 455 (4th Cir. 2000) (noting that a petitioner is not entitled to a hearing under 28 U.S.C. § 2254(e)(2)). For the reasons that follow, the Court will deny the Petition and decline to issue a Certificate of Appealability.

### I. BACKGROUND

Washington challenges his conviction for conspiracy to commit murder for which the Circuit Court for Baltimore City, Maryland ("Circuit Court") sentenced him to life in prison. (Pet. Writ Habeas Corpus ["Pet."] at 1–2, ECF No. 1[1]; Resp. Ex. 2 ["1st Ct. Spec.

---

[1] Citations to the Petition are to the pages the Court's Case Management/Electronic Case Filing ("CM/ECF") system assigned. Unless otherwise noted, CM/ECF citations refer to filings in this case.

App. Op."] at 1, 3, Washington v. Shearin ["Washington I"], No. JFM-15-128 (D.Md. closed Feb. 24, 2015), ECF No. 7-2).

On June 13, 2007, Washington was charged with conspiracy to murder, first-degree murder, second-degree murder, and related handgun offenses in the death of Ricardo Paige, who was shot six times in his Baltimore home in March 2007. (1st Ct. Spec. App. Op. at 1; Resp'ts' Resp. Ex. 1 ["State Court Docket"] at 1, ECF No. 12-1).

During voir dire on January 12, 2009, the Circuit Court posed an "anti-CSI effect"[2] question to the potential jurors:

> If you have watched movies, television shows or read any material, fiction or non-fiction, in which scientific evidence was used to solve crimes, and you have an opinion or belief that without scientific evidence or specific forms of scientific evidence, for example, but not limited to fingerprints or DNA, you could not find a Defendant guilty regardless of the evidence presented, please rise.

(Resp't's Resp. Ex. 2 ["Jan. 12, 2009 Trial Tr."] at 29, ECF No. 12-2). Washington's trial counsel did not object to the question, and the Circuit Court proceeded to ask several more questions, (see id. at 29–43), before eventually picking a jury, which Washington's counsel accepted, (id. at 271).

---

[2] The popularity of crime scene investigation ("CSI") dramas on television such as "CSI: Crime Scene Investigation," has led to speculation that such shows produce a "CSI effect" that may skew jury verdicts. See, e.g., Atkins v. State, 26 A.3d 979, 993 (Md. 2011). For example, such dramas may encourage unrealistic expectations about the availability and results of scientific techniques such as DNA sequencing, fingerprint analysis, and ballistics, increasing the likelihood of finding reasonable doubt where forensic evidence is not produced. Id.

2

At trial, a firearms expert testified that two shell casings found at the crime scene were fired from the handgun police recovered from Washington at the time of his arrest. (1st Ct. Spec. App. Op. at 1). Jamal Fulton, who pleaded guilty to conspiracy to murder Paige, testified that Washington believed Paige had stolen his drugs. (Id. at 2). Fulton testified that Washington told him that he had to "do something" with Paige and that Fulton told Washington that he should "do it in the dark" and "do it up." (Id.). Two days later, Fulton asked Washington what happened to Paige, and Washington told him that he "took care of him," meaning that he had killed Paige. (Id.). Latonya Odom, Fulton's girlfriend, testified that she heard Washington say that he was "going to get" Paige. (Id.). The State also called Washington's twin brother, Tremaine Washington, as a witness, but he refused to answer most of the prosecutor's questions. (Id. at 3). Detective James Lloyd then testified that he interviewed Tremaine Washington on May 16, 2007 and November 20, 2008. (Id.). The Circuit Court admitted the tape recordings of those interviews into evidence over defense counsel's objection. (Id.). In the May 16, 2007 tape recording, Tremaine Washington stated that his brother had told him that Paige had stolen from him and that his brother shot Paige multiple times. (Id.). In the November 20, 2008 interview, Tremaine Washington said his brother had admitted to shooting Paige with a .45 caliber gun because Paige had stolen drugs from him. (Id.).

On January 20, 2009, the Circuit Court instructed the jury, including about the presumption of innocence and the meaning of reasonable doubt. (Jan. 20, 2009 Trial Tr. at 16–17, ECF No. 12-3). On January 21, 2009, the jury found Washington guilty of

conspiracy to murder Paige, but it was unable to return a unanimous verdict on the murder and handgun charges. (State Court Docket at 1; 1st Ct. Spec. App. Op. at 3).

On direct appeal to the Court of Special Appeals of Maryland, Washington presented three questions for review: (1) "Did the trial court err in denying his motion to suppress the handgun and statements he made at the time of arrest?"; (2) "Did the trial court err in admitting hearsay evidence?"; and (3) Does the record fail to reflect that the jury convicted appellant of conspiracy to commit murder in the first degree?" (1st Ct. Spec. App. Op. at 1). On June 30, 2010, the Court of Special Appeals affirmed Washington's convictions. (Id. at 34). On October 22, 2010, the Court of Appeals of Maryland declined Washington's petition for writ of certiorari. (Pet. at 9).

On August 23, 2011, Washington filed a post-conviction petition in the Circuit Court. (Pet. Ex. 1 ["1st Post-Convict. Mem. & Op."] at 1–3, 5, ECF No. 1-1). In his post-conviction petition, Washington argued that he received ineffective assistance of counsel at trial under Strickland v. Washington, 466 U.S. 668 (1984), because his attorney failed to object to the judge's voir dire pertaining to anti-CSI effect, which poisoned the jury and deprived him of a fair trial. (Id.). The State countered that Washington had not objected to the question at trial, and therefore he had not preserved the issue for appeal; that the question was harmless because the judge instructed the jury that the State has the burden to prove Washington's guilt beyond a reasonable doubt; and that the jury instruction was proper under prevailing law at the time and that trial counsel had no duty to anticipate changes in the law. (Id. at 5–6).

On May 16, 2012, the Circuit Court conducted a hearing, and on August 29, 2012, granted Washington post-conviction relief. (1st Post-Convict. Mem. & Op. at 8–9; Criminal Case Online Docket at 3; Sept. 2, 2014 Order, Cir.Ct.Balt.City ["2d Post-Convict. Mem. & Op."], ECF No. 12-4). Relying on Charles & Drake v. State, 997 A.2d. 154 (Md. 2010), the Circuit Court concluded that Washington had proven that his trial counsel was ineffective and ordered a new trial. (1st Post-Convict. Mem. & Op. at 6–9). In Charles & Drake, the trial court asked a similar question of the venire panel: "[I]f you are currently of the opinion or belief that you cannot convict a defendant without "scientific evidence," regardless of the other evidence in the case and regardless of the instructions that I will give you as to the law, please rise . . . ." (Id. at 6). On appeal, the Court of Appeals of Maryland determined that use of the word "convict" in the question suggested that was the jury's only option regardless of whether scientific evidence was presented, thereby depriving the defendants in that case of a fair and impartial jury. (Id. at 6 (citing Charles & Drake, 997 A.2d. at 162)). The Circuit Court concluded that Washington's trial counsel's "failure to object to the non-neutral voir dire question was a deficiency that prejudiced [his] case." (Id. at 8). The Circuit Court rejected the State's waiver argument on the basis of Washington's testimony that he only became aware of the error after reviewing the trial transcript and researching the governing law. (Id.).

The State appealed. (See Resp. Ex. 4 ["Ct. Spec. App. Remand Order"], Washington I, ECF No. 7-4). On November 6, 2013, the Court of Special Appeals vacated the grant of

5

post-conviction relief in light of State v. Stringfellow[3] and remanded the case to the Circuit Court for further consideration. See State v. Washington, No. 1572, Application for Leave to Appeal (Post Conviction) (Md. Ct. Spec. App.) (Sept. Term 2012); see also Ct. Spec. App. Remand Order at 1–2; 2d Post-Convict. Mem. & Op. at 2. Based on Stringfellow, the Court of Special Appeals held that in Washington's case, "the post conviction court did not make a first-level finding of fact as to whether there was a reasonable possibility that the challenged voir dire question contributed to the guilty verdict." (Id. at 2).

On September 2, 2014, the Circuit Court, on remand, denied Washington post-conviction relief. (2d Post-Convict. Mem. & Op. at 1, 7). The Circuit Court considered Washington's analogy to Charles & Drake, 997 A.2d. at 154, but stated that Charles & Drake was decided "several months after [Washington's] trial and the law does not require lawyers to anticipate changes in the law." (Id. at 5 (citing Prokopis v. State, 433 A.2d 1191 (Md.Ct.Spec.App. 1981)). The Circuit Court, therefore, concluded that trial counsel acted within the reasonable standard expected at the time of Washington's trial and his representation was not deficient under Strickland. (Id.).

The Circuit Court explained, in three key respects, how Stringfellow dictated the outcome of Washington's post-conviction case. First, the Stringfellow court held that objections to voir dire questions "are waived if not preserved appropriately at the time the trial court empanels the jury." (Id. at 5–6 (quoting Stringfellow, 425 Md. at 471)). Because

---

[3] In Stringfellow, the Court of Appeals held that a scientific evidence voir dire question is harmless if "there is no reasonable possibility that the erroneously propounded voir dire question contributed to the guilty verdict." 42 A.3d 27, 34–35 (Md. 2012).

6

Washington did not object to the jury when it was empaneled, he waived any objection he may have had as to the scientific evidence voir dire question. (Id. at 6). Second, the Stringfellow court found any error to be harmless because the trial court followed the scientific evidence question by asking the venire panel if they would be able to render a fair and impartial verdict based upon the evidence presented in the courtroom and the law. (Id.). At Washington's trial, the court correctly instructed the jury about the presumption of Washington's innocence and the State's burden to prove him guilty beyond a reasonable doubt. (Id.). Third, the Circuit Court noted that, in Stringfellow, defense counsel attacked the lack of scientific evidence during closing arguments, which the Court of Appeals considered to be the most significant factor in holding that the scientific evidence question did not contribute to the guilty verdicts. (Id. at 6–7). Washington's trial counsel also attacked the lack of scientific evidence during closing arguments, suggesting that the scientific voir dire question did not contribute to the eventual guilty verdict. (Id. at 7).

Washington appealed, reasserting his claim of ineffective assistance of trial counsel for failing to object to the trial court's voir dire question. (Applic. Leave Appeal, Washington I, ECF No. 7-5). On January 15, 2015, Washington filed his first petition for writ of habeas corpus. (Pet., Washington I, ECF No. 1). On February 24, 2015, this Court dismissed that petition without prejudice for lack of exhaustion. (Feb. 24, 2015 Mem. & Order, Washington I, ECF Nos. 9, 10). The Court of Special Appeals denied Washington's Application for Leave to Appeal on February 4, 2016. (Pet. at 9, 12).

On June 24, 2016, Washington filed his Habeas Petition. (ECF No. 1). Therein, Washington asserts three grounds for federal habeas relief: (1) the post-conviction court

abused its discretion by failing to comply with the Court of Special Appeals' limited remand order; (2) he was denied a fair and impartial jury; and (3) he received ineffective assistance of trial counsel. (Pet. at 5–6, 8, 13–25; Suppl. at 1–4, ECF No. 6). On November 7, 2016, Respondents filed an Opposition. (ECF No. 12). On December 9, 2016, Washington filed a Reply. (ECF No. 18).

## II. DISCUSSION

### A. Standard of Review

A district court may only grant a petition for a writ of habeas corpus for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a) (stating "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States").

A federal court may not grant a writ of habeas corpus unless the state court's adjudication on the merits: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court adjudication is "contrary to" clearly established federal law under § 2254(d)(1) where the state court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." Williams v. Taylor, 529 U.S. 362, 405 (2000). Under the

"unreasonable application analysis," a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough. v Alvarado, 541 U.S. 652, 664 (2004)). In other words, "a federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." Renico v. Lett, 559 U.S. 766, 773 (2010) (quoting Williams, 529 U.S. at 411).

Under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal court may not conclude that the state court decision was based on an unreasonable determination of the facts. Id.

Further, "a determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where the state court has "resolved issues like witness credibility, which are 'factual

determinations' for purposes of Section 2254(e)(1)." Id. (quoting Wilson v. Ozmint, 352 F.3d 847, 858 (4th Cir. 2003).

**B.      Analysis**

The Court will first address Washington's claims that he received ineffective assistance of counsel at trial and that he was denied a fair and impartial jury,[4] and then consider whether the Circuit Court abused its discretion in denying Washington post-conviction relief on remand from the Court of Special Appeals.

1.      **Ineffective Assistance of Counsel**

Washington asserts he received ineffective assistance because his trial counsel failed to object to the "anti-CSI effect" scientific evidence voir dire question. Respondents contend that the state court's determination that counsel acted reasonably under the prevailing state law at the time of Washington's trial forecloses relief as to this claim because habeas relief is not available for errors of state law, nor does a federal court reexamine a state court's determinations of state law. Respondents further assert that Washington does not satisfy his burden to show ineffective assistance under Strickland. The Court agrees with Respondents.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. Const.

---

[4] Both Respondents and the Circuit Court addressed Washington's jury claim in the context of his ineffective assistance of counsel claim. (See 1st Post-Convict. Mem. & Op.). Respondents contend that if Washington brings it as a separate basis for relief, then his claim is procedurally defaulted because he did not raise it in all appropriate state courts. (Resp. at 23 n.2, ECF No. 12). Washington does not dispute the assertion of procedural default or provide grounds to excuse default.

amend. VI. This guaranteed assistance of counsel must be "effective." Strickland, 466 U.S. at 686 (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)). To establish ineffective assistance of counsel, a petitioner must show both: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced his defense. Strickland, 466 U.S. at 687.

To satisfy the first prong of the Strickland standard, a petitioner must demonstrate that counsel's performance was not "within the range of competence normally demanded of attorneys in criminal cases." Id. at 687. The standard for assessing such competence is "highly deferential" and includes a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." Id. at 669. "The lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'" Buck v. Davis, 137 S.Ct. 759, 775 (2017) (quoting Strickland, 466 U.S. at 690).

The second prong requires the court to consider whether counsel's errors were so serious that there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 690–94. "The benchmark of an ineffective assistance claim must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." Id. at 686. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id. at 693. Rather, counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. The Court need not appraise the attorney's performance if it

is clear that no prejudice would have resulted had the attorney been deficient. See id. at 697. The principles governing ineffectiveness claims apply in federal collateral proceedings in the same way as they do on direct appeal or in a motion for new trial. Id. The presumption that a criminal judgment is final is at its strongest in collateral attacks on that judgment. Id.

A federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. See 28 U.S.C. § 2254(d)(1). A petitioner must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (quoting Strickland, 466 at 689). "There is a 'strong presumption' that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer neglect.'" Harrington, 562 U.S. at 109 (quoting Yarborough v. Gentry, 540 U.S. 1, 8 (2003) (per curiam)); see also Sharpe, 593 F.3d at 383 ("Counsel is not required to engage in the filing of futile motions."). "The standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Harrington, 562 U.S. at 105 (first quoting Strickland, 466 at 689; then quoting Lindh v. Murphy, 521 U.S. 320, 333 n.7 (1997); and then quoting Knowles v. Mirayance, 556 U.S. 111, 123 (2009)); see also Cullen v. Pinholster, 563 U.S. 170, 190 (2011) (same). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable

argument that counsel satisfied Strickland's deferential standard." Harrington, 562 U.S. at 105.

Here, the Circuit Court determined that trial counsel did not provide constitutionally ineffective assistance by failing to raise an objection at trial based on case law decided after Washington's trial. "[T]he case law is clear that an attorney's assistance is not rendered ineffective because he failed to anticipate a new rule of law." Kornahrens v. Evatt, 66 F.3d 1350, 1360 (4th Cir. 1995) (collecting cases).[5] Further, the record supports the Circuit Court's determination that the voir dire question was harmless. The trial court took curative action by asking follow-up voir dire questions and instructing the jury regarding the burden of proof. Washington's trial counsel challenged the sufficiency of the scientific evidence in his closing argument. Moreover, the State introduced substantial evidence of Washington's guilt at trial, including witness and expert testimony, tape recordings, and physical evidence, which supported the jury's verdict.

Having reviewed the record against the background of the doubly deferential standard of review applicable to ineffective assistance claims in § 2254 proceedings, the

---

[5] Washington also contends that, when viewed through the lens of Atkins v. State, 26 A.3d 979 (Md. 2011) and Stabb v. State, 31 A.3d 298 (Md. 2011), "the 'anti-CSI effect' question, under these circumstances, effectively relieved the State of its burden to prove [Washington] guilty beyond a reasonable doubt, and invaded the province of the jury by directing it to disregard or discount [Washington's] lack of physical evidence defense." (Pet. at 13). But the Court of Appeals decided Atkins and Stabb after Washington was convicted in 2009, and, therefore, Washington's trial counsel had no obligation to foresee those appellate results. Further, in Atkins, the Court of Appeals emphasized that the scientific evidence instruction under consideration was invalid "based on the particular facts" and that "we do not hold that an investigative techniques instruction would never be proper." 26 A.3d at 990.

Court concludes that the Circuit Court's decision was not an unreasonable application of federal law or an unreasonable determination of the facts.[6] Accordingly, the Court will deny the Petition as to this claim.

### 2. Scope of Post-Conviction Court's Review on Remand

Washington argues the Circuit Court abused its discretion by failing to comply with the Court of Special Appeals' "limited remand by ruling on several issues that exceeded the scope of the mandate," and ran "afoul of the United States Supreme Court's mandate rule and the law of the case doctrine." (Pet. at 13 (first citing Sprague v. Ticonic National Bank, 307 U.S. 161, 168 (1939); and then citing Agostini v. Felton, 521 U.S. 203, 236 (1997)). Washington maintains that the Circuit Court did not have the authority on remand to consider waiver, a change in law, or whether trial counsel's representation was deficient under Strickland. Respondents counter that Washington's claim is not cognizable in this Court, and if it is, that the Circuit Court followed the Court of Special Appeals' Remand Order.[7] The Court agrees with Respondents.

As a threshold matter, Respondents argue, without much explanation, that, although Washington cites two Supreme Court cases, the substance of his claim is based solely on state procedural rules and that his claim is, therefore, not cognizable on federal habeas

---

[6] To the extent Washington attempts, in his Supplement to the Petition, to introduce a new and separate claim that trial counsel was ineffective for failing to preserve the voir dire question issue for appeal, (Suppl. at 1–2), his effort fails for at least three reasons. First, the claim is procedurally defaulted. Second, the voir dire question was harmless. Third, counsel's failure to preserve an issue on appeal based on future case law is not deficient representation under Strickland.

[7]

14

review. Respondents misconstrue Washington's argument. While it is true that "[i]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 68 (1991), Washington argues that Sprague and Agostini set out clearly established federal law which the Circuit Court violated on remand from the Court of Special Appeals.

The United States Court of Appeals for the Fourth Circuit has applied the mandate rule from Sprague—a lower court must "carry the mandate of the upper court into execution and [can] not consider the questions which the mandate laid at rest," 307 U.S. 161, 168 (1939)—to the state courts of North Carolina in resolving a prisoner's federal habeas claim. See Smith v. Dixon, 14 F.3d 956, 968 (4th Cir. 1994); see also Phillips v. Houk, 587 F.App'x 868, 870 (6th Cir. 2014) (discussing the Sprague mandate rule's application in Ohio state courts); Tu v. State, 648 A.2d 993, 1014 (Md. 1994) (Bell, J., dissenting) (applying Sprague rule to state-court proceedings). Further, courts often refer to the mandate rule as a subset of the law-of-the-case doctrine from Agostini, see, e.g., Tu, 648 A.2d at 997–98. While the Court cannot find any application of Agostini in a context analogous to Washington's Petition, state courts, including Maryland's, have followed this doctrine as well. See Roane v. Washington Cty. Hosp., 769 A.2d 263, 266 (Md. 2001) ("The federal courts, like Maryland courts, apply the law of the case doctrine and the mandate rule."); see also Jones v. Sears Roebuck & Co., 301 F. App'x 276, 285 (4th Cir. 2008) (applying the law of the case doctrine from Agostini to a case which was partially adjudicated in state court, then removed to federal court). The Court, therefore, concludes

that Washington's claim based on Sprague and Agostini is cognizable on federal habeas review and will proceed to analyze its merits.

The Court of Special Appeals' directed the Circuit Court to reconsider its post-conviction ruling in light of Stringfellow and to make a first-level finding of fact whether there was a reasonable possibility that the challenged voir dire question contributed to the guilty verdict. The relevant factors in Stringfellow for determining whether the voir dire question was harmless included: (1) whether the erroneously given question was "reiterated during jury instruction or other comments from the bench while the jury was present"; (2) the presence of alleviating jury instructions or "follow-on instruction/voir dire question"; (3) whether the judge allowed the parties an unrestrained chance to argue the adequacy or inadequacy of scientific evidence necessary to the defense, and (4) the judge's instructions to the jury as to the State's burden of proof. See 42 A.3d at 34–36.

The Circuit Court followed the appellate court's directions on remand, determining that the scientific evidence voir dire question was harmless. The Circuit Court noted the trial judge followed the scientific evidence question by asking members of the venire whether they were able "to render a fair and impartial verdict based upon the evidence presented in the courtroom and the law as it will be given to you in my instructions." (Jan. 12, 2009 Trial Tr. at 37:4–10). The Circuit Court also cited the trial judge's instructions that the defendant is presumed innocent, is not required to prove he is innocent, and "[t]his presumption [of innocence] remains with the defendant throughout every stage of the trial, and is not overcome, unless you are convinced beyond a reasonable doubt that the defendant is guilty." (Jan. 20, 2009 Trial Tr. at 16–17). The Circuit Court also noted that

16

defense counsel attacked the lack of scientific evidence during closing arguments. (Id. at 46:12–19, 53:4–7).

The Circuit Court on remand followed the Court of Special Appeals' instructions to consider the case in light of Stringfellow, and thus did not violate the mandate rule from Sprague or law of the case doctrine as explained in Agostini. As a result, Washington has not meet his burden to show that the conduct of the state court "was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Accordingly, the Court will deny the Petition as to this claim.

## C. Certificate of Appealability

When a district court dismisses or denies a petition for a writ of habeas corpus, an inmate may appeal the ruling only upon the issuance of a certificate of appealability. 28 U.S.C. § 2253(c)(1) (2018). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). When a district court rejects constitutional claims on the merits, a petitioner satisfies the standard by demonstrating that "jurists of reason could disagree with the district court's resolution of [the] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Buck, 137 S.Ct. at 773 (quoting Miller-El v. Cockrell, 537 U.S. 322, 327 (2003)). When a petition is denied on procedural grounds, the petitioner meets the standard with a showing that reasonable jurists "would

find it debatable whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Because Washington fails to satisfy these standards, the Court declines to issue a certificate of appealability. Washington may request that the Fourth Circuit issue such a certificate. See Lyons v. Lee, 316 F.3d 528, 532 (4th Cir. 2003).

### III. CONCLUSION

For the foregoing reasons, the Court will deny the Petition. The Court will also decline to issue a Certificate of Appealability. A separate Order follows.


_____8/5/19_____                               _____/s/_____
        Date                                     George L. Russell III
                                                 United States District Judge